Electronically FILED by Superior Court of California, County of Los Angeles on 07/21/2020 04:57 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton,Deputy Clerk

Case 2:20-cv-09917-CAS-PVC    Document 1-2    Filed 10/28/20    Page 1 of 30    Page ID #:105

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Robert Broadbelt

1   THE LAW OFFICES OF RODERICK J. LINDBLOM
    RODERICK J. LINDBLOM (Bar No. 153768)
2   10880 Wilshire Boulevard, Suite 1150
    Los Angeles, California 90024
3   Telephone: (310) 552-2021
    Facsimile: (310) 552-2022
4   rod.lindblomlaw@gmail.com

5
    *Attorneys for Plaintiff* ARCLIGHT FILMS
6   INTERNATIONAL PTY. LTD.

7

8               SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9                       COUNTY OF LOS ANGELES

10

11  ARCLIGHT FILMS INTERNATIONAL          CASE NO: 20STCV27472
    PTY LTD., an Australian proprietary
12  limited company,                      **VERIFIED COMPLAINT FOR DAMAGES
                                          AND INJUNCTIVE RELIEF**
13                  Plaintiff,

14          vs.

15  NETFLIX GLOBAL, LLC, a Delaware
    limited liability company; NETFLIX,
16  INC., a Delaware corporation; ANIMAL
    CRACKERS MOVIE LTD., an English
17  private limited company; and DOES 1-25,
    inclusive,
18
                    Defendants.
19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT

Plaintiff ARCLIGHT FILMS INTERNATIONAL PTY LTD., by and through its undersigned counsel, brings this action against defendants NETFLIX GLOBAL, LLC, a Delaware limited liability company, NETFLIX, INC., a Delaware corporation, and ANIMAL CRACKERS MOVIE, LTD., an English private limited company, as follows:

**PRELIMINARY STATEMENT**

1.     Arclight brings this action to address Defendant Animal Cracker's breach of the parties' valid and binding Sales Agency Agreement, and to enjoin Defendants Netflix and Netflix Global from digitally releasing the Picture in violation of Arclight's rights thereunder, on the basis that any such digital release would put Arclight in breach of distribution agreements with certain licensed territories, and irreparably damage the marketability of Arclight's sole and exclusive right to license distribution rights in the Picture to other, unlicensed territories.

**THE PARTIES**

2.     Plaintiff ARCLIGHT FILMS INTERNATIONAL PTY LTD. ("Arclight" or "Plaintiff"), is, and at all times herein mentioned was, a proprietary limited company duly organized and existing under and by virtue of the laws of Australia, with its principal place of business located at 8730 Wilshire Boulevard, Suite 508, Beverly Hills, California 90211.

3.     Plaintiff is informed and believes and, on the basis of such information and belief, herein alleges that defendant NETFLIX GLOBAL, LLC ("Netflix Global"), is, and at all times herein mentioned was, a limited liability company duly organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business located at 5808 Sunset Blvd., 11th Floor, Los Angeles, California 90028.

4.     Plaintiff is informed and believes and, on the basis of such information and belief, herein alleges that defendant NETFLIX, INC. ("Netflix"), is, and at all times herein mentioned was, a corporation duly organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business located at 5808 Sunset Blvd., 11th Floor, Los Angeles, California 90028.

5.     Plaintiff is informed and believes and, on the basis of such information and belief, herein alleges that defendant ANIMAL CRACKERS MOVIE, LTD. ("Animal Crackers"), is, and at

THE LAW OFFICES OF RODERICK J. LINDBLOM
10880 Wilshire Boulevard, Suite 1150
Los Angeles, California 90024
T: (310) 552-2021 – F: (310) 552-2022

1

all times herein mentioned was, a private limited company duly organized and existing under and by virtue of the laws of England and Wales, with its principal place of business located at 8th Point Pentire Avenue, Newquay, Cornwall, England TR7 1 FS.

6.    The true names and capacities of DOES 1 through 25, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff at this time, who therefore sues said defendants by such fictitious names, and when the true names, capacities, and relationships of such defendants are ascertained, Plaintiff will seek leave of Court to amend this Complaint to assert the same.

7.    Plaintiff is informed and believes and, on the basis of such information and belief, herein alleges that each defendant named in this Complaint was, at all times herein mentioned, and now is, the agent and/or employee of each of the other defendant herein, and was at all times acting within the course and scope of said agency and/or employment.  When referring to "Defendants" herein, Plaintiff intends to include defendants Netflix Global, Netflix, Animal Crackers, and all other defendants.

**JURISDICTION AND VENUE**

8.    Pursuant to California Code of Civil Procedure ("CCP") § 410.10, this Court has jurisdiction over Defendants, and each of them, because each Defendant is a person or a business entity that is a resident and/or business entity that is established, incorporated, and/or has sufficient minimum contacts with the State of California so far as to render exercise of jurisdiction over Defendants consistent with traditional notions of fair play and substantial justice.  Further, damages exceed the jurisdictional minimum of this Court.

9.    Pursuant to CCP § 395.5, venue is proper in this Court because Defendants liabilities and obligations to Plaintiff arose in the County of Los Angeles.

**FACTS COMMON TO ALL CAUSES OF ACTION**

10.    Defendant Animal Crackers, and its principal Scott Sava, have been developing the feature length animated motion picture entitled "Animal Crackers," starring Emily Blunt, Danny DeVito and John Krasinski (the "Picture"), since at least as early as January of 2016.  Since then, the Picture has languished in development, substantially exceeded its original budget, and developed a

THE LAW OFFICES OF RODERICK J. LINDBLOM

10880 Wilshire Boulevard, Suite 1150
Los Angeles, California 90024
T: **(310) 552-2021** – F: **(310) 552-2022**

bad reputation among sales agents as a result of Defendant's inability to provide a definitive release date for several years.

11.    Nevertheless confident it could successfully sell the Picture, in or about March 29, 2017, Arclight entered into an Agreement with Defendant Animal Crackers (the "Agreement"), whereby Defendant Animal Crackers granted Arclight the exclusive right to distribute or otherwise exploit the Picture throughout the universe outside of North America, Mainland China and South Korea (the "Territory"), in exchange for Defendant Animal Cracker's obligation to pay Arclight Ten Percent (10%) of all gross revenues received from exploitation of the Picture in the Territory (the "Agent Fee"), and a Three Hundred and Fifty Thousand Dollar ($350,000) marketing fee (the "Marketing Fee").  A true and correct copy of the Agreement is attached hereto as Exhibit "A" and incorporated herein by this reference.

12.    Among other terms contained therein, the Agreement obligated Defendant Animal Crackers to represent and warrant that (a) it owned the Picture free and clear at the time it entered into the Agreement; (b) it would not license any of the rights exclusively licensed to Arclight via the Agreement to any third party; and (b) it would release the Picture theatrically in North America on no less than 2,000 movie screens.  The first two warranties were essential to Arclight's exclusive rights granted by way of the Agreement.  The third warranty was essential to Arclight's ability to license distribution rights in the Picture to one or more Territories at the highest possible price, since films that have an initial North American theatrical release always go for substantially more in licensing fees in other Territories than films only initially released online via Netflix or other digital platforms.

13.    At various points during Arclight's rendering of services pursuant to the Agreement, Defendant Animal Crackers' principal Scott Sava threatened to terminate the Agreement without any contractual grounds to do so.  During one such threat sent via email on or about June 18, 2018, Mr. Sava stated "I think its best we separate…What paperwork do we need to split up?"  However, for any purported notice of termination from Defendant Animal Crackers to be effective under the Agreement, it must be in writing, mailed to Arclight's designated agent, and preceded by a material breach of such Agreement that Arclight would have an opportunity to cure.  Furthermore, Arclight's

THE LAW OFFICES OF RODERICK J. LINDBLOM
10880 Wilshire Boulevard, Suite 1150
Los Angeles, California 90024
T: (310) 552-2021 – F: (310) 552-2022

right to receive its Agent Fee and Marketing Fee under the Agreement exists regardless of whether there has been a breach and subsequent termination thereof.

14.    Arclight therefore continued to dutifully render its sales agency services pursuant to the Agreement until in or about March of 2020.  At that time, after successfully licensing distribution rights in the Picture to distributors in Latin America, Vietnam and Myanmar (collectively, the "Licensed Territories"), and working hard to market and license such distribution rights elsewhere around the world, Arclight learned that Defendant Animal Crackers had gone around Arclight and agreed to grant all rights to distribute the Picture throughout the universe to Defendants Netflix and Netflix Global (collectively referred to hereinafter as "Netflix"), in exchange for receipt of approximately Eight Million Dollars ($8,000,000), which was to be disbursed by Netflix in multiple payments.

15.    Accordingly, on or about March 25, 2020, Arclight sent a written correspondence to Netflix advising them of Arclight's rights to distribute the Picture throughout the Territory and requesting that they immediately cease and desist from any plans to distribute the Picture themselves.  A true and correct copy of Arclight's March 25, 2020 correspondence is attached hereto as Exhibit "B" and incorporated herein by this reference.

16.    Arclight did not receive any response to its March 25, 2020 correspondence, and therefore sent a follow up correspondence on or about April 3, 2020.  After receiving no response to its April 3, 2020 follow up correspondence, Arclight sent one final correspondence on or about June 29, 2020, wherein Arclight advised Netflix that Arclight would seek a temporary restraining order preventing Netflix from releasing the Picture on their anticipated July 24, 2020 release date, given the irreparable injury that would result to Arclight from losing its rights to distribute the Picture in the Territory.  A true and correct copy of Arclight's June 29, 2020 correspondence is attached hereto as Exhibit "C" and incorporated herein by this reference.

17.    On or about June 29, 2020, Arclight finally received a response from Netflix, which in three short sentences simply stated that Netflix believed it had no responsibility to address Arclight's concerns because Netflix was indemnified.  A true and correct copy of Netflix's June 29, 2020 correspondence is attached hereto as Exhibit "D" and incorporated herein by this reference.

VERIFIED COMPLAINT

18.     Netflix has paid at least half of the approximately Eight Million Dollars ($8,000,000) due for the right to distribute the Picture in the same Territories in which Arclight also possesses the right to distribute the Picture, while payment of the remaining half remains pending.

19.     This Complaint, and Arclight's anticipated request for injunctive relief, therefore necessarily result.

**FIRST CAUSE OF ACTION**

**Breach of Contract**

**(By Plaintiff Against Defendant Animal Crackers and DOES 1-5)**

20.     Plaintiff repeats, realleges, and incorporates herein by this reference each and every allegation contained in Paragraphs 1 through 19, inclusive, as though set forth in full herein.

21.     Commencing on or about March 29, 2017, at Los Angeles, California, Plaintiff and Defendant Animal Crackers entered into the Agreement, whereby Defendant Animal Crackers granted Arclight the exclusive right to distribute or otherwise exploit the Picture throughout the Territory, in exchange for Defendant Animal Cracker's obligation to pay Arclight the Agent Fee and Marketing Fee.

22.     Arclight licensed distribution rights in the Picture to the Licensed Territories and was working hard to market and license such rights elsewhere around the world as well.  Arclight has performed all of its obligations under the Agreement that Arclight was capable of performing.  Notwithstanding the terms of the Agreement, Defendant Animal Crackers breached the Agreement by, among other actions, licensing Arclight's exclusive rights in the Picture to Netflix after the Agreement was entered into, and – as a direct result of such deal – precluding the Picture from ever having a North American theatrical release.

23.     As a result of Defendant Animal Crackers' breach of the Agreement, Plaintiff has suffered damages in an amount to be determined at trial, together with interest thereon at the maximum rate allowed by law.

24.     Since at least in or about June 2018, Arclight has made demands upon Defendant Animal Crackers for payment of all amounts due and owing to Arclight under the Agreement.  Defendant Animal Crackers has failed and refused to address such demand, and there is now due,

THE LAW OFFICES OF RODERICK J. LINDBLOM
10880 Wilshire Boulevard, Suite 1150
Los Angeles, California 90024
T: (310) 552-2021 – F: (310) 552-2022

VERIFIED COMPLAINT

owing, and unpaid from Defendant Animal Crackers to Arclight an amount to be determined at trial but exceeding the jurisdictional minimum of this Court, together with interest thereon at the maximum rate allowed by law.

## SECOND CAUSE OF ACTION

### Declaratory Relief

### (By Plaintiff Against Defendants Netflix, Netflix Global and DOES 6-10)

25.    Plaintiff repeats, realleges, and incorporates herein by this reference each and every allegation contained in Paragraphs 1 through 24, inclusive, as though set forth in full herein.

26.    An actual controversy exists between Arclight and Netflix regarding Arclight's exclusive interest in, and right to distribute, the Picture throughout the Territory.

27.    Arclight reasonably anticipates litigation regarding Arclight's exclusive interest in, and right to distribute, the Picture throughout the Territory, as a result of Netflix's anticipated release of the Picture in the Territory on or about July 24, 2020.  Accordingly, Arclight requests that this Court grant declaratory relief, declaring that Arclight has the sole and exclusive interest in, and right to distribute, the Picture throughout the Territory pursuant to the Agreement.

28.    Arclight is informed and believes and, on the basis of such information and belief, herein alleges that Netflix's distribution of the Picture in violation of Arclight's sole and exclusive interest in, and right to distribute, the Picture throughout the Territory, will – unless enjoined by this Court – cause irreparable injury to Arclight by, without limitation, (a) forcing Arclight into breach of its existing contractual obligations to provide the Picture to the Licensed Territories for distribution, and by (b) severely limiting Arclight's future ability to license distribution rights in the Picture to the remainder of the Territory after it has been digitally released through Netflix without any North American theatrical release.  Arclight, therefore, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.    For injunctive relief;

2.    For general damages in an amount to be determined at trial but exceeding the jurisdictional minimum of this court, together with interest thereon at the maximum

THE LAW OFFICES OF RODERICK J. LINDBLOM
10880 Wilshire Boulevard, Suite 1150
Los Angeles, California 90024
T: (310) 552-2021 – F: (310) 552-2022

rate allowed by law;

3.   For a declaration of the parties' respective rights and obligations in and to the Picture and the distribution rights therein; and

4.   For such other further relief as this Court deems just and proper.

Dated:  July 21, 2020

Respectfully submitted,

THE LAW OFFICES OF
RODERICK J. LINDBLOM, APLC

By:
RODERICK J. LINDBLOM
*Attorneys for Plaintiff*
ARCLIGHT FILMS INTERNATIONAL PTY LTD

VERIFIED COMPLAINT

## VERIFICATION

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, Brian Beckmann, declare:

I am an officer of Plaintiff Arclight International Films PTY LTD., the plaintiff in this action. I have read the foregoing Complaint and know its contents. The matters stated in the foregoing Complaint are true to the best of my own knowledge, or are stated on my information and belief and I believe them to be true.

Executed on July 21, 2020, in Los Angeles county, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

BRIAN BECKMANN

8

VERIFIED COMPLAINT

# EXHIBIT "A"

# Arclight Films

90/330 Wattle Street
Ultimo NSW, Australia
TEL: + 61 (0) 28353 2440
WWW.ARCLIGHTFILMS.COM

This Agreement ("Agreement") is made and entered into as of March 29, 2017 between Animal Crackers Movie Limited ("Producer"), whose address is 8th Point Pentire Avenue, Newquay, Cornwall, England TR7 1 FS, and Arclight Films International Pty. Ltd., an Australian proprietary limited company ("Agent"), whose registered address is 90/30 Wattle Street, Ultimo, NSW 2007, Australia, with regards to the Producer's engagement of Agent as the sole and exclusive sales agent for the Picture in the Territory upon the following terms and conditions.

1.     Picture. The motion picture ("Picture") tentatively entitled "Animal Crackers" directed by Tony Bancroft and Scott Christian Sava, and featuring the voices of Emily Blunt, John Krasinski, Sylvester Stallone, Ian McKellen, Danny Devito and Patrick Warburton.

2.     Territory. The "Territory" is the entire universe, excluding only the following territories:

     a.     North America, Mainland China, and South Korea; and

     b.     The pre-sold territories of Iceland, Portugal, Turkey, United Kingdom, Bulgaria, Czech Republic, Hungary, Romania, Poland, Russia, Baltics, Yugoslavia, Canada, Israel, India, Middle East, West Indies, English Speaking Africa, and Ancillary/Airlines (the "Pre-Sold Territories").

3.     Term. The "Term" of this Agreement shall commence upon the date hereof, and continue for fifteen years (15) years; provided that if Producer has recouped the Picture's budget within that period, then the Term shall automatically extend for an additional ten (10) years.

4.     Licensed Rights / COT Documents.

     a.     The "Licensed Rights" shall mean the right to exploit, exhibit, distribute, market, promote, transmit and disseminate the Picture (and all allied and ancillary rights relating thereto), in any and all media now known or hereafter devised, including, all forms of theatrical, home video, television (including free, cable, pay and satellite), non-theatrical rights (including, hotel, ship and airline rights), internet and wireless, by any and all methods of delivery, whether now known or hereafter devised.

     b.     Agent shall also have the right to publicize, promote, and advertise the Picture by means of trailers, excerpts, posters, synopses, summaries, extracts, stills, and other promotional materials throughout the Territory, in all media without restriction. Said right shall include, but is not limited to, the right to disseminate, reproduce, print and publish the names, approved biographies, voices and approved likenesses of the talent, characters or other persons connected with the Picture, all portions and elements thereof, including, without limitation, all available "behind-the-scenes," and "making of" documentaries of the Picture and all bloopers, trims and outtakes of the Picture.

Animal Crackers SAA 003 - SSAVA Signed.docx

c.       As soon as reasonably practicable, Producer shall provide Agent with an electronic copy of all material agreements pursuant to which Producer acquired the Licensed Rights in and to the Picture ("COT Documents").

5.       Appointment.

a.       Producer hereby appoints Agent, and Agent accepts such appointment, to act as Producer's sole and exclusive sales agent in the Territory during the Term with respect to the sales, marketing, licensing, and servicing of the Licensed Rights in the Picture. Pursuant to such appointment, Agent shall perform all services customarily undertaken by sales agents in the motion picture industry on Producer's behalf including, without limitation: (i) seeking out, identifying, and engaging with potential buyers and/or licensees of the Licensed Rights (each a "Distributor"); (ii) negotiating, drafting, and entering into agreements with Distributors for the distribution and exploitation of the Licensed Rights ("Distribution Agreements"); (iii) developing a presentation plan and package for marketing the Picture to potential Distributors; (iv) coordinating the delivery of all required delivery materials to the Distributors in accordance with the Distribution Agreements; (v) monitoring and assisting in the collection of payments owing to Producer under the Distribution Agreements; (vi) ensuring such payments are made directly to the Picture's collection account ("CA") for disbursement in accordance with the collection account management agreement ("CAMA"); and (vii) using reasonable efforts to arrange for the participation of the Picture in appropriate film festivals as approved by Producer.

b.       Pursuant to such appointment, Agent shall be exclusively entitled during the Term:

(i)       To negotiate the terms of the Distribution Agreements as Producer's agent, and to take such actions as Agent deems necessary collect any unpaid amounts owing under the Distribution Agreements.

(ii)       To make any changes and modifications to the Picture (including cutting, editing, and/or dubbing), and to authorize Distributors to do the same (but subject at all time to third party contractual restrictions), which become necessary by reason of:

(a)       Rulings, regulations or requirements of censorship authorities for the release of the Picture in any country or countries of the Territory,

(b)       Customary requirements relating to exploitation of the Picture on television in any country or countries of the Territory, or

(c)       For the insertion of credits and/or logos for Distributor(s) immediately preceding the main credits of the Picture.

(d)       Notwithstanding the foregoing, Agent shall not cut or alter the credits, copyright notice, or Producer's name and logo from the Picture. Agent may add to the Picture credits with Agent's name and logo, reflecting Agent in its capacity as the sales agent. Agent shall not change the title of the Picture without Producer's prior written consent. Any and all expenses incurred by Agent in connection with changes in the Picture under this clause shall be paid for by Agent.

(iii)       To manufacture and procure such materials as are necessary for the performance of the Distribution Agreements, and to authorize Distributors to do so at their own expense.

Animal Crackers SAA 003 - SSAVA Signed.docx

(iv)    To advertise, publicize and exploit the Picture by such means and to such extent
as Agent may deem necessary, and to authorize Distributors to do so subject to any third parties'
contractual requirements of which Agent is informed at the time of Delivery.  Agent will meaningfully
consult with Producer regarding the initial marketing campaign and plan for the Picture, including the
print and advertising budgets. Agent shall meaningfully consult with Producer regarding any key artwork
which Agent intends to use in marketing the Picture if such key artwork is different from the materials
supplied by Producer.  Producer shall have access to advertising materials created by Agent at no
additional costs other than duplication costs.

(v)    To project, exhibit and/or perform the Picture, or any parts thereof, at film
festivals and markets throughout the world.

(vi)    To use, and authorize Distributors to use, the names, approved photographs,
approved likenesses, voices and other sound effects, of the director, cast members, and such other
personnel as Agent deems appropriate in connection with the marketing, publicizing, and promotion of
the Picture.

(vii)    To insert Agent's credit and logos as set forth herein.

c.    Agent makes no representation, warranty, or guarantee, express or implied, with regards
to the amount of Gross Receipts (as defined below) to be achieved through its efforts hereunder.

d.    Producer acknowledges that Agent performs similar services for itself and third party
producers, and that such activities shall not be treated as a conflict or in any way in contravention of this
Agreement.

e.    As a courtesy to Producer, Agent shall service the Pre-Sold Territories at no charge to
Producer.  Producer shall be solely responsible for all costs associated with the Pre-Sold Territories,
including the preparation, delivery, and/or replacement of Delivery Materials.

6.    Producer Approval and Consultation Rights.

a.    Producer shall have approval over the Basic Material Terms (as defined below) of the
Distribution Agreements, provided that such approval is not unreasonably withheld or delayed.  As used
herein, "Basic Material Terms" shall refer to the material economic terms of the proposed Distribution
Agreement, which shall include: (i) the Licensed Rights that are subject to the Distribution Agreement;
(ii) the length of the license period; (iii) the territory to be licensed; (iv) the license fee, including, any
advance or minimum guarantee and royalty participation; and (v) delivery materials required under the
Distribution Agreement.

b.    Agent shall notify Producer of the Basic Material Terms of any Distribution Agreement
proposed to be entered into hereunder, after which Producer shall have five (5) days (reducible to twenty-
four (24) hours during festivals and markets) in which to notify Agent of its acceptance or rejection.  If
Producer fails to notify Agent during this period, then the determination of whether to accept or reject the
proposed terms shall be in Agent's discretion.

c.    Notwithstanding the foregoing, any Distribution Agreement entered into on the IFTA
Standard Multiple Rights Agreement, substantially in the form attached hereto as Exhibit "B," which
provides for a minimum guarantee at or above the applicable "take" price set forth on the Agent's

Animal Crackers SAA 003 - SSAVA Signed.docx

estimates attached hereto as Exhibit "C," a term of no longer than twenty (20) years, and no additional Delivery Materials other than those delivered hereunder, shall be deemed pre-approved.

7.    Delivery.

    a.    On or before July 1, 2017 (the "Delivery Date"), Producer shall deliver, or cause to be delivered to Agent, the materials and documents set forth on Exhibit "A," which exhibit is incorporated herein by this reference ("Delivery Materials"). Upon receipt, Agent shall have a period of thirty (30) days in which to review the Delivery Materials, and notify Producer of their rejection or acceptance. If Producer fails to provide any of the Delivery Materials, or any of the Delivery Materials do not conform to the requirements of Exhibit A, or any of the Delivery Materials are not of acceptable quality (as evidenced by a quality control report), Producer shall have thirty (30) days in which to correct any deficiencies, and re-deliver the non-conforming or missing Delivery Materials. This process shall continue until Agent notifies Producer that Delivery has been accepted. In the event that Producer fails or refuses to correct any delivery deficiencies, then Agent shall have the right, in its sole discretion, to either (i) terminate this Agreement, in which case the parties shall have no further liabilities or obligations to each other; or (ii) manufacture the missing items of delivery itself, the cost of which shall be recouped by Agent as a "delivery expense" as provided herein.

8.    Agent Fee.

    a.    Agent shall receive a fee (the "Agent Fee") in the amount of ten percent (10%) of one hundred percent (100%) of Gross Receipts derived from the licensing or exploitation of the Picture in the Territory.

    b.    "Gross Receipts" shall mean 100% of all non-refundable revenues, sums, compensations, monies and other forms of consideration (including, but not limited to all installment payments of minimum guarantees, advances, overages, license fees, and royalties) payable in connection with the distribution and exploitation of the Licensed Rights in the Territory.

9.    Marketing Fee. Agent shall be entitled to a non-accountable Marketing Fee ("Marketing Fee") in the amount of Three Hundred Fifty Thousand United States Dollars (USD$350,000) recoupable from Gross Receipts.    Capped at → SSAVA
                                                                        ヰ▵ヰ

10.    Delivery Expenses. In the event that Producer fails to deliver any items of Delivery Materials, Agent shall have the right to create such missing Delivery Materials, and deduct their costs from Gross Receipts at the rate of 120% of Agent's actual costs ("Delivery Expenses").

11.    Distribution and Accounting of Gross Receipts.

    a.    Subject to the prior recoupment positions by lenders, and recoupment by the completion guarantor of any completion sums actually expended, all Gross Receipts for the Picture shall be applied on a rolling basis as follows in the order set out below:

        (i)    Collection account fee: The collection agent shall retain its fee; then

        (ii)    Residual Reserve: a residual reserve in connection with the exploitation of the Picture in the Territory; then

Animal Crackers SAA 003 - SSAVA Signed.docx

    (iii)   To Agent for the payment of the Agent Fee calculated on 100% of Gross Receipts;

    (iv)   To Agent for payment of the Marketing Fee; then

    (v)   To Agent for reimbursement of Delivery Expenses (if any); then

    (vi)   To Producer or as otherwise directed by Producer.

    b.   The parties shall establish a collection account ("CA") for the collection and disbursement of all Gross Receipts. All distributors shall be instructed to remit payment of all amounts owing under the Distribution Agreements directly to the CA. Producer and Agent shall be parties to the collection account management agreement (the "CAMA"), which shall provide for the disbursement of Gross Receipts in the foregoing manner. In the event any payments from Distributors are remitted directly to the Producer or Agent, such payments shall be deemed by the receiving to be held in trust for the other party, and forwarded to the CA within five (5) business days from their receipt.

    c.   Notwithstanding Section 11(b), should the parties forgo or delay the implementation of the CA, then Agent shall instruct the Distributors to remit the Gross Receipts directly to Agent, who shall then administer and account to Producer as follows: Agent shall furnish Producer with detailed accounting statements on a quarterly basis within sixty (60) days after the end of each quarter for the first two (2) years commencing upon collection of first monies by Agent hereunder. Thereafter, such statements shall be provided on a semi-annual basis, within sixty (60) days of the end of the applicable accounting period, for four (4) years and annually thereafter for the remainder of the Term. Agent need not provide a statement for a particular period if there are no Gross Receipts to report, unless Producer requests a statement in writing for that period within sixty (60) days of the date such statement would otherwise be due. Said statements shall reflect collections made quarterly, semi-annually or annually, as applicable, as well as cumulatively throughout the Term; and shall include amounts deducted for the Agent Fee, the Marketing Fee, any Delivery Expenses, and any amounts owing to the Producer, along with payment of such amount. Producer shall have the audit rights set forth in Section 18 in connection with such accounting.

12.   Credits and Logos. Agent shall be entitled to: (i) a logo and sales company credit on screen in the end titles of the Picture; (ii) a static logo in all paid ads wherever the respective Distributor's logo appears; (iii) a static logo on all artwork and promotional materials throughout the Territory created by Agent; (iii) a presentation credit on screen and in the billing block of paid ads.

13.   Trailer and Artwork. Producer shall meaningfully consult with Agent on all matters relating to the creation and delivery of any and all advertising and marketing materials, including but not limited to the key art and trailer, as more fully described as part of the Delivery Materials.

14.   Notices. Any notices given pursuant to this Agreement shall be in writing and shall be furnished to the designated address of the recipient party set forth below by messenger, overnight courier, facsimile, electronic mail, or first class postage prepaid, and shall be deemed received upon its transmission via facsimile or electronic mail, its receipt by messenger, the second business day following transmittal by overnight courier, or three business days following mailing.

To Producer:                   To Agent:
Animal Crackers Movie Limited      Arclight Films International, Pty. Ltd.
8th Point Pentire Avenue            9107 Wilshire Blvd., #600

Animal Crackers SAA 003 - SSAVA Signed.docx

Newquay, Cornwall                                    Beverly Hills, CA 90210
England TR7 1 FS

15.    Residuals and Third Party Obligations. Producer represents and warrants to Agent that all third party participations and payments (whether computed upon net profits, gross proceeds or otherwise) worldwide will be borne solely by Producer, including any and all guild and union payment obligations, profit participations, music synchronization, performance and other mechanical fees, and any other license fees (including all literary, artistic, musical, technological and/or intellectual property rights fees) applicable to the Picture. Producer shall engage a third party payroll company acceptable to Agent to calculate and process payment for any and all supplemental market payments and residuals that may be required under any collective bargaining agreements ("Residuals").

16.    Representations and Warranties.

    a.    Producer represents and warrants that:

        (i)    It is duly organized and validly existing under the applicable laws, rules, and regulations of its jurisdiction of formation, and has the sole and exclusive right and the full legal ability to enter into and perform its obligations under the Agreement;

        (ii)    There are no existing, threatened, potential or future claims or litigation which would adversely affect or impair Producer's ability to perform or Agent's full exercise of its rights under this Agreement;

        (iii)    Producer owns free and clear all rights necessary to enter into this Agreement and no third party consents are necessary for Agent to fully exercise all rights hereunder, and the Licensed Rights are and will remain free and clear of any claims, liens, charges or encumbrances which might interfere with, conflict with or frustrate Agent's exercise of its rights hereunder, and exploitation of the Licensed Rights;

        (iv)    Producer will not grant to any third party any of the Licensed Rights in the Territory without the express written consent of Agent.

        (v)    The exploitation and distribution of the Picture (including the title thereof) and all related marketing and bonus materials by Agent and/or Distributors in the form delivered by Producer will not knowingly infringe or violate any copyright, trademark, trade name, service mark, patent, literary, intellectual, artistic or dramatic right of any other proprietary right or the right of privacy of, or constitute defamation, libel or slander against any common law rights or any other rights of any person, firm, entity, or corporation, and will not be contrary to any law.

        (vi)    Producer owns or controls the right to utilize and synchronize "in context" all recorded music as part of the Picture and trailers thereof throughout the Territory for the duration of the term of the Distribution Agreements. The performing rights to all musical compositions contained in the Picture are (i) controlled by ASCAP, BMI, JASRAC, PRS, SESAC, SACEM, GEMA or their affiliates; or (ii) controlled by Producer to the extent required for the purpose of this Agreement, and it similarly controls synchronization and performing licenses for any and all synchronization and recording rights necessary for the exploitation of all of Agent's rights under this Agreement.

Animal Crackers SAA 003 - SSAVA Signed.docx

(vii)    Any third party participations and payments (whether computed on gross profits, net profits, gross proceeds or otherwise) worldwide will, as between Agent and Distributors, on one hand, and Producer on the other, will be borne solely by Producer; and

(viii)    Producer will timely provide Agent each year with appropriate certification of tax residency in form and quantity as reasonably requested by Agent. Agent shall reasonably cooperate with Producer's efforts to minimize or eliminate withholding taxes payable in connection with the remittance of Gross Receipts.

(ix)    The Picture will be released theatrically in North America on no less than 2,000 screens, with a print and advertising spend of no less than $15,000,000.

Notwithstanding anything to the contrary contained in this Agreement, the representations, warranties, agreements and indemnities shall survive any termination of expiration of this Agreement.

b.    Agent represents and warrants that:

(i)    It is duly organized and validly existing under the applicable laws, rules and regulations of its country of formation;

(ii)    It has the sole and exclusive right, power, authority and full legal ability to enter into and performs its obligations under this Agreement; and

(iii)    Agent is not insolvent.

c.    Notwithstanding the foregoing, Producer acknowledges that Agent shall have no obligation or liability hereunder:

(i)    to review chain of title documents in connection with the Picture including the COT Documents, it being understood that Producer shall indemnify and hold harmless Agent from and against any Claims relating from defect of chain of title of the Picture or in other rights and clearances related to the Picture.

(ii)    to make any third party payments in respect thereof, or as a result of, any distribution, advertising and other exploitation of the Picture hereunder.

17.    Indemnification.

a.    Producer shall defend, indemnify, and save harmless Agent and its Affiliates (defined as any other person or entity who directly or indirectly, controls, is controlled by, or is under common control with Agent) and their respective officers, directors, members, partners, employees, including reasonable outside attorney's fees, in connection with any third party claim or action ("Claim") arising out of or relating to: (i) the use or disposition of the Licensed Rights by Agent as permitted by this Agreement; (ii) any defect in the chain of title for the Picture or any failure to have all clearances and rights necessary to exploit the Picture for worldwide sale and distribution in the manner contemplated by this Agreement; (iii) any Claim by third parties arising from any contractual restrictions and obligations affecting the Pictures or the exploitation, publicizing or advertising thereof, including Claims resulting from any credit obligations not being adhered to (provided that any such Claims are not on account of Agent's failure to abide by such contractual restrictions and any non-adherence to credit obligations is not the result of any failure by Agent to abide by the statement of credits delivered to Agent as part of

Animal Crackers SAA 003 - SSAVA Signed.docx

Delivery); (iv) any Claims which arise as a consequence of any claims and rights of owners of copyrights, trademarks, patent rights and any other rights in and to the Picture's title and underlying literary, dramatic or musical properties not being fully discharged by Producer prior to Delivery of the Picture to Agent; and (vi) any uncured material breach by Producer of any representation or warranty herein.

      b.     Agent shall defend, indemnify, and save harmless Producer and its Affiliates, and their respective officer, directors, members, partners, employees, exhibitors, licensees, and assignees against any and all liability, damages, costs and expenses, including reasonable outside attorney's fees, in connection with any third party claim or action arising out of or relating to: (i) any breach by Agent of any representation or warranty herein, and/or (ii) as a result of any gross negligence or intentional misconduct or tortious conduct by Agent or its agents, employees and representatives.

      c.     Control of Litigation: Agent shall have the right to assume the defense of any claim made by a third party against Agent and arising from an uncured material breach of any representation, warranty or agreement of Producer hereunder or that otherwise may be subject to the indemnity set forth above. Producer shall have the right as well as the obligation to consult and cooperate with Agent in connection with any such third party claim and, upon Agent's request, to furnish Agent with any and all evidence, materials or other information relevant thereto. Producer shall have the right (at Producer's sole expense subject to this provision) to have Producer's own counsel present in connection with the defense of any such third party claim, provided that such counsel fully cooperates with Agent's counsel and in no way interferes with the handling of the case by Agent's counsel. Producer understands and agrees that if Producer did not timely defend with counsel reasonably acceptable to Agent, all aspects of the defense of any such third party claim, whether as part of any litigation, negotiation or otherwise (including, without limitation, any decision regarding any settlement), shall be controlled by Agent, Agent shall be free to use counsel of Agent's choice in connection therewith, and such control shall in no way abrogate or diminish Producer's indemnity obligations.

18.    Records / Audit. Agent shall keep and maintain, at its principal place of business, complete and accurate books of account and records in connection with its services under this Agreement. During the Term of the Agreement, Producer or its internal or external accountants (experienced in the matter of motion picture business auditing), may, upon reasonable notice and during Agent's regular business hours, but not more than once per year (and for not more than twenty [20] consecutive business days), have full access to and audit such books and records, and the books and records of Agent's subsidiaries, parents or affiliated companies, solely as they relate to the Picture. Any statements not disputed or records not audited by Producer for a period of twenty-four (24) months after such statements are furnished to Producer shall be deemed final and correct. If an audit is conducted and it discloses that Producer has been underpaid by an amount greater than five percent (5%) of the amount actually paid (but not less than ten thousand dollars ($10,000), then Agent shall reimburse Producer for its reasonable, actual out-of-pocket audit fees and costs. All audits shall be conducted in a reasonable manner so as to minimize disruption of Agent's regular business activities.

19.    Assignment. Neither party may assign, transfer, sell, or mortgage this Agreement or any interest therein or rights hereunder, other than to its affiliates provided that in the event of such transfer to such successor or to any of its associated, affiliated, and subsidiary companies, Agent or Producer, as applicable, shall remain the primary obligor.

20.    Termination.

      a.     Either party may terminate this Agreement by written notice if the other party commits a material breach of its terms and fails to cure such breach (if capable of cure) within thirty (30) days after

Animal Crackers SAA 003 - SSAVA Signed.docx

receipt of written notice demanding same or if the other party becomes subject to or seeks relief under the bankruptcy, insolvency, receivership, re-organization, moratorium or other like statute or law or enters into an assignment for the benefit of creditors or composition of creditors.

      b.     Upon termination of this Agreement, all Distribution Agreements entered into by Agent prior to the date of termination shall remain in full force and effect, and Agent shall remain entitled to payment of its Agent Fee in connection with such sales in accordance with Section 11.

      c.     Unless the termination is for Agent's willful misconduct or gross negligence, Agent shall remain entitled to its Marketing Fee, payable from Gross Receipts in accordance with Section 11.

21.     No Partnership / Joint Venture. Nothing contained herein shall constitute a partnership between or joint venture by the parties hereto.

22.     Limited Waiver. No waiver by Agent or Producer of any of their respective rights or entitlements hereunder shall constitute any waiver or obligate Agent and/or Producer to waive any other rights or entitlements, or to waive the same or similar rights or entitlements at any other times or in different circumstances. For clarity, both Agent and Producer shall at all times remain fully entitled to enforce all of its rights and benefits stated in the Agreement.

23.     Applicable Law / Jurisdiction. This Agreement shall be construed in accordance with the laws of England and Wales. Any disputes arising hereunder, including, without limitation, any dispute involving the enforcement, performance or alleged breach of this Agreement, shall be resolved by IFTA arbitration in England before a single neutral arbitrator. The prevailing party in any arbitration or other dispute resolution procedure hereunder shall be entitled to an award of its reasonable outside attorney's fees and costs. All arbitration proceedings shall be closed to the public and confidential and all records relating thereto shall be permanently sealed, except as necessary to obtain court confirmation of the arbitration award.

24.     Entire Agreement / Binding Effect / Severability. Upon its full execution, this Agreement shall be binding on the parties and their respective successors and assigns. This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof, and supersedes any and all prior discussions, inducements, representations, correspondence, deal memos, and understandings pertaining thereto. This Agreement may only be modified by a further instrument in writing signed by both parties. No provision of this Agreement shall be interpreted to require either party to perform or act contrary to law. Should any conflict exist between any provision contained in this Agreement and any law or governmental regulation, the latter shall prevail to the extent necessary to bring the provisions within the requirements of such law or governmental regulation, the latter shall prevail to the extent necessary to bring the provisions with the requirements of such law or governmental regulation, and the Agreement shall otherwise remain in full force and effect.

25.     No Third Party Beneficiaries. Nothing contained herein in this Agreement shall be construed so as to create any third party beneficiary hereunder. In this regard, nothing contained in this Agreement shall entitle any third party to any remedies against Agent and its related and affiliated parties, at law, in equity or otherwise, including, without limitation, any additional audit rights or the right to seek or obtain injunctive relief.

26.     Execution in Counterparts. This Agreement may be executed in counterparts and transmitted by electronic PDF file, each of which counterpart shall constitute an original and when taken together shall constitute the fully-executed Agreement.

The parties hereto hereby confirm their agreement as of the date herein indicated by affixing their signatures here below.

Animal Crackers Movie Limited                    Arclight Films International Pty. Ltd.


By: Scott Sava

Its: Director

By: _____

Its: _____

Animal Crackers SAA 003 - SSAVA Signed.docx

Animal Crackers Movie Limited

Arclight Films International Pty. Ltd

By: _____
Its: _____

By: Brian Beckmann
Its: Authorized Signatory

Animal Crackers SAA 003.docx

# EXHIBIT "B"

# THE LAW OFFICES OF
# RODERICK J. LINDBLOM

10880 Wilshire Blvd, Suite 1150, Los Angeles, California 90024          (310) 552-2021  Fax (310) 552-2022

March 25, 2020

Netflix Global, LLC
5808 W. Sunset Blvd., 9th Floor
Los Angeles, California 90028

Attention: Netflix Legal & Business Affairs

Netflix, Inc.
100 Winchester Circle
Los Gatos, California 95032

Attention: General Counsel

RE:  Animated Feature Film Animal Crackers

Dear Netflix Legal/Business Affairs:

Please be advised that this firm represents Arclight Films International Pty Ltd. ("Arclight").  As you are aware, Arclight is the Sales Agent for the animated feature film entitled "Animal Crackers" (the "Picture"), having executed the Sales Agency Agreement (the "Agreement") between Arclight and Animal Crackers Movie Limited ("Producer"), on March 29, 2017.  Note that the Producer engaged Arclight as the sole and exclusive sales agent for the Picture throughout the world, excluding North America, Mainland China, and South Korea (the "Territory").  At all times relevant hereto, and continuing to present, the Agreement has been, and remains in full force and effect.

From the onset, Arclight heavily marketed and promoted the Picture to distributors throughout the Territory, including Netflix and concluded sales with numerous distributors.  To be clear, Arclight's head of sales, Ruzanna Kegeyan was in discussions with Matt Brodie and Chan Phung between May and August 2017.

It has now come to our attention that Netflix has acquired distribution rights to the Picture in territories which are included within the Territory, and that the sale was concluded in circumvention and contravention of Arclight's exclusive sales rights. As such, the attempted sale of distribution rights by anyone other than Arclight to any part of the Territory is invalid, and represents a break in the chain of title with regards to the distribution rights for such territories.

Towards this end, notice is hereby given, that until this matter has been resolved and the chain of title cleared, Arclight demands that Netflix cease, desist, and refrain from the distribution of the Picture in any part of the Territory.

This letter is not intended to be a complete recitation of our client's position and has been written solely for the purpose of resolving our client's claims and all applicable privileges relating to settlement discussions apply.  Nothing contained in or omitted from this letter is intended to be, nor should be construed as being a waiver of any of our client's rights or claims, remedies and causes of action, whether at law of in equity, all of which are hereby expressly reserved and shall be vigorously pursued.

Very truly yours,

THE LAW OFFICES OF
RODERICK J. LINDBLOM,

RODERICK J. LINDBLOM

RJL/cs: client

# EXHIBIT "C"

**THE LAW OFFICES OF**
**RODERICK J. LINDBLOM**

10880 Wilshire Blvd, Suite 1150, Los Angeles, California 90024          (310) 552-2021  Fax (310) 552-2022

April 3, 2020

Netflix Global, LLC
5808 W. Sunset Blvd., 9th Floor
Los Angeles, California 90028

Attention: Netflix Legal & Business Affairs

Netflix, Inc.
100 Winchester Circle
Los Gatos, California 95032

Attention: General Counsel

RE:  Animated Feature Film Animal Crackers

Dear Netflix Legal/Business Affairs:

On March 25, 2020, this office put Netflix on express notice, coupled with Netflix's previous notice from your prior negotiations, of Arclight Films International Pty Ltd. position as Sales Agent regarding the animated feature film entitled "Animal Crackers," having executed the Sales Agency Agreement with Animal Crackers Movie Limited on March 29, 2017.

To date we have not had a response to our notice.  Our Client has requested that we send this final missive to Netflix in an attempt to circumvent a chain of title dispute and to alleviated the necessity of having the courts get involved to determine the rights and remedies of the parties, including claims in equity.

Towards that end, please get back to me at your earliest convenience to discuss and hopefully resolve this matter.

Again, this letter is not intended to be a complete recitation of our client's position and has been written solely for the purpose of resolving our client's claims and all applicable privileges relating to settlement discussions apply.

Nothing contained in or omitted from this letter is intended to be, nor should be construed as being a waiver of any of our client's rights or claims, remedies and causes of action, whether at law or in equity, all of which are hereby expressly reserved.

Very truly yours,

THE LAW OFFICES OF
RODERICK J. LINDBLOM,

RODERICK J. LINDBLOM

RJL/cs: client

# EXHIBIT "D"

THE LAW OFFICES OF
**RODERICK J. LINDBLOM, APC**

10880 Wilshire Blvd, Suite 1150, Los Angeles, California 90024          (310) 552-2021  Fax (310) 552-2022

**June 29, 2020**

*SENT VIA EMAIL*

Netflix Global, LLC
5808 W. Sunset Blvd., 9 th Floor
Los Angeles, California 90028

**Attention: Netflix Legal & Business Affairs**

Netflix, Inc.
100 Winchester Circle
Los Gatos, California 95032

**Attention: General Counsel**

> **RE:**    **Animated Feature Film Animal Crackers**
> **LASC Case No.: \*\*\*Unassigned**

Dear Netflix Legal/Business Affairs:

This third and final written correspondence follows our March 25, 2020 and April 3, 2020 correspondences, wherein we advised that our client Arclight Films International Pty Ltd. ("Arclight") is the sole and exclusive Sales Agent for the animated feature film entitled "Animal Crackers" (the "Picture") in all territories throughout the world other than North America, Mainland China and South Korea (collectively, the "Territory"), by way of a Sales Agency Agreement fully executed on or about March 29, 2017 (the "Agreement"). As already stated, we are advised that Netflix has acquired distribution rights to the Picture in territories included within the Territory. However, any such rights acquired by Netflix are invalid, given Arclight's possession of its exclusive rights in the Territory, and Netflix therefore cannot freely release the Picture due to such chain of title issues.

We are alarmed that our diligent and timely requests to resolve this dispute have been completely ignored by Netflix, especially given the fact that Netflix was aware of Arclight's position as the Sales Agent for the film as far back as 2017. **Accordingly, please be advised that unless efforts are made to contact our office within ten (10) days of the receipt of this correspondence, and make arrangements to resolve the above identified chain of title issues, our office will have no choice but to move promptly to obtain a temporary restraining order halting the release of the Picture before its scheduled July 24, 2020 release date**, pursuant to California Code of Civil

Procedure ("CCP") §§ 525 and 527. Please also note that the Agreement does not limit Arclight's ability to seek injunctive relief for a breach thereof.

We look forward to your prompt attention to this matter and remain hopeful that any further legal action will not be necessary. In the interim, nothing contained herein or omitted herefrom is intended, nor shall be construed, to operate as an admission, limitation, or waiver of any of Arclight's rights, remedies or defenses, at law and/or in equity, all of which are hereby expressly reserved.

Very truly yours,

THE LAW OFFICES OF
RODERICK J. LINDBLOM

RODERICK J. LINDBLOM

RJL/cs

cc: Client (by email only)