**PAUL N. SORRELL (BAR NO. 126346)**
psorrell@lavelysinger.com
**MARTIN F. HIRSHLAND (BAR NO. 322629)**
mhirshland@lavelysinger.com
**LAVELY & SINGER**
**PROFESSIONAL CORPORATION**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone:  (310) 556-3501
Facsimile:(310) 556-3615

Attorneys for Defendants NETFLIX GLOBAL, LLC, NETFLIX, INC. and MAYDAY MOVIE PRODUCTIONS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ARCLIGHT FILMS INTERNATIONAL PTY LTD., an Australian proprietary limited company,<br><br>Plaintiff,<br><br>v.<br><br>NETFLIX GLOBAL, LLC, a Delaware limited liability company; NETFLIX, INC., a Delaware corporation; ANIMAL CRACKERS MOVIE LTD., an English private limited company; MAYDAY MOVIE PRODUCTIONS, LLC, a Washington limited liability company; and DOES 1-25, inclusive,<br><br>Defendants. | **CASE NO. 2:20-cv-09917-CAS-PVC**<br><br>**[Hon. Christina A. Snyder]**<br><br>**REPLY BRIEF OF DEFENDANTS NETFLIX GLOBAL, LLC, NETFLIX, INC. AND MAYDAY MOVIE PRODUCTIONS, INC. IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date:          December 7, 2020<br>Time:          10:00 a.m.<br>Courtroom:   8D<br><br>State Court<br>  Complaint Filed:  July 21, 2020<br>  Action Removed:  October 28, 2020 |

Defendants Netflix Global, LLC, Netflix, Inc. (collectively, "Netflix") and Mayday Movie Productions, LLC ("Mayday") (Netflix and Mayday are collectively sometimes referred to as "Defendants") respectfully submit this Reply Brief in support of their Motion to Dismiss First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("the Motion"), as follows:

6576-3

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ...................................................................1

II. ARCLIGHT FAILS TO ALLEGE THE SECOND CAUSE OF ACTION FOR COPYRIGHT INFRINGEMENT ..........................................................1

    A. The Copyright Act's Exclusive Application To Domestic Infringement Bars The Claim Because Arclight Had No Rights And Infringement Did Not Occur In The United States.....................................................2

    B. Arclight Has No Protectable Copyright Interest in the Picture. ............3

    C. Arclight Has Never Registered Any Purported Interest in the Picture With the U.S. Copyright Office. ...........................................................4

III. ARCLIGHT'S STATE COURT CLAIMS HAVE NO EXTRA ELEMENT THAT ALLOWS IT TO ESCAPE PREEMPTION .........................................5

IV. ARCLIGHT CANNOT ALLEGE A CAUSE OF ACTION FOR BREACH OF CONTRACT OR INTERFERENCE WITH CONTRACT AGAINST MAYDAY ......................................................................................................6

V. ARCLIGHT CANNOT ALLEGE A CAUSE OF ACTION FOR UNJUST ENRICHMENT .............................................................................................7

VI. LEAVE TO AMEND WOULD BE FUTILE AND SHOULD BE DENIED.8

VII. CONCLUSION ............................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal. 4th 503 (1994) .................................................................................... 7

*Carrico v. City & Cty. of San Francisco*,
   656 F.3d 1002 (9th Cir. 2011) ...................................................................... 8

*Fortaleza v. PNC Fin. Servs. Grp., Inc.*,
   642 F. Supp. 2d 1012 (N.D. Cal. 2009) ........................................................ 2

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
   139 S. Ct. 881 (2019) .................................................................................... 5

*Liberty Toy Co. v. Fred Silber Co.*,
   149 F.3d 1183 (6th Cir. 1998) ...................................................................... 2

*Maloney v. T3Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2017) ...................................................................... 5

*McBride v. Boughton*,
   123 Cal. App. 4th 379 (2004) ....................................................................... 7

*Moore v. Kayport Package Exp., Inc.*,
   885 F.2d 531 (9th Cir. 1989) ........................................................................ 8

*Moran v. London Records, Ltd.*,
   827 F.2d 180 (7th Cir. 1987) ........................................................................ 4

*Randles Films, LLC v. Quantum Releasing, LLC*,
   551 Fed. Appx. 370 (9th Cir. 2014) .............................................................. 2

*United States v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011) ........................................................................ 8

**Statutes**

17 U.S.C. § 106 ..................................................................................................... 5

## I. PRELIMINARY STATEMENT

Plaintiff Arclight Films International Pty Ltd.'s ("Arclight") Opposition fails to establish any legitimate basis for claims against Netflix or Mayday. Arclight's copyright claim fails not only because it is a sales agent that does not possess any exclusive rights under copyright, but also because it has no rights whatsoever in the United States. Arclight's state law claims are all preempted by copyright.

In the face of these clear grounds for dismissal, Arclight argues that dismissal would be unfair. However, it was Arclight that elected to add a copyright cause of action and to avail itself of the Copyright Act's statutory damages scheme. Arclight now faces the consequences of that strategic decision as copyright cases are the exclusive province of the federal courts. Not only does the copyright claim belong in this court, but so do Arclight's state law claims, all of which are preempted.

Finally, dismissal does not mean that Arclight would be (as it argues) precluded from its day in court. To the contrary, Arclight can still attempt to plead and prove its claims against Defendant Animal Crackers ("ACM") for breach of the Sales Agency Agreement. Indeed, a contract claim against ACM is the only claim that Arclight should have brought, as the Sales Agency Agreement *is between Arclight and ACM only*.

There simply is no valid legal claim against Netflix or Mayday, parties with whom Plaintiff was never in privity, are strangers to Arclight, and committed no actionable wrongs. The Motion should be granted. Leave to amend should be denied because Arclight cannot reasonably amend the complaint (yet again) to allege a valid claim against Mayday or Netflix.

## II. ARCLIGHT FAILS TO ALLEGE THE SECOND CAUSE OF ACTION FOR COPYRIGHT INFRINGEMENT

Arclight's alleged copyright infringement should be dismissed without leave to amend, because (1) no (alleged) infringement occurred in the United States; (2) Arclight possesses no exclusive rights under copyright; and (3) even if Arclight did

obtain a copyright interest in the Picture, Arclight has not registered its interest with the Copyright Office, and thus lacks a key prerequisite to initiating a copyright infringement action. Nothing contained in Arclight's Opposition to Defendants' Motion to Dismiss, Dkt. 15 ("Opp'n") controverts the arguments mandating dismissal of the copyright claim.

### A. The Copyright Act's Exclusive Application To Domestic Infringement Bars The Claim Because Arclight Had No Rights And Infringement Did Not Occur In The United States.

As set forth in Defendants' Motion, the Sales Agency Agreement expressly *excludes* from its scope North America, Mainland China and South Korea. FAC ¶13. Thus, even assuming Arclight possessed any rights under copyright (which it did not), such rights could only be *outside* the United States. The longstanding extraterritoriality limitation bars Arclight's copyright infringement claim. *Liberty Toy Co. v. Fred Silber Co.*, 149 F.3d 1183 (6th Cir. 1998) ("it is a long-standing principle that United States copyright laws do not have extraterritorial operation…if all the copying or infringement occurred outside the United States, the Copyright Act would not apply").

Faced with the plain language of the Sales Agency Agreement, Arclight's Opposition argues, without any support whatsoever, that an "act of infringement" somehow occurred "in the United States." Opp'n, 5:16-17. But Arclight does not say what this act of infringement was. Indeed, no such act of infringement is even alleged in the FAC. *See Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F. Supp. 2d 1012, 1022 (N.D. Cal. 2009) ("Vague allegations and mere labels and conclusions are insufficient to withstand a motion to dismiss.")

In a vain attempt to survive dismissal, Arclight looks to *Randles Films, LLC v. Quantum Releasing, LLC*, 551 Fed. Appx. 370 (9th Cir. 2014). But *Randles Films* stands for the opposite proposition for which Arclight cites it. In *Randles Films* the "infringement occurred *wholly within* the United States" and the court

held that "[a]lthough damages caused by foreign acts of infringement are not recoverable, the Copyright Act's extraterritoriality limitation does not bar recovery for losses that are caused entirely by domestic acts of infringement." Here we have the opposite situation: Arclight's (alleged) infringements could only have occurred outside the United States because Arclight had no rights in the United States.

### B. Arclight Has No Protectable Copyright Interest in the Picture.

The Sales Agency Agreement attached to the FAC indisputably establishes that Arclight was not granted any exclusive right under copyright. The word "exclusive" in the Sales Agency Agreement is only used to modify "sales agent"; as in Arclight is the "sole and exclusive sales agent in the Territory." Paragraph 5 of the Sales Agency Agreement (the "Appointment" paragraph) is explicit: Arclight is appointed "exclusive sales agent" only with respect to "sales, marketing, licensing, and servicing of the Licensed Rights." The Sales Agency Agreement does not give Arclight the right to *exercise* the Licensed Rights, but only to sell, market, license and service those Licensed Rights. And even if Arclight were allowed to exercise the Licensed Rights, which it was not, the Licensed Rights themselves are not even "exclusive". See Para. 4(a).

*Syndicate Films* is dispositive. As in that case, Arclight is "an agent with nothing more than the right to negotiate and enter into license agreements," and thus lacks statutory standing to bring a claim for copyright infringement. *Syndicate Films Int'l, LLC*, 2010 WL 11519582 (C.D. Cal. 2010) at *3. Arclight fails to distinguish *Syndicate Films*. Arclight alleges that it was to receive "Ten Percent (10%) of all gross revenues received from exploitation of the Picture," Opp'n, 2:2-3, but that is a common contractual term for sales agents. *Cf. Syndicate Films Int'l, LLC*, 2010 WL 11519582, at *1 (Plaintiff was to receive "ten percent of any gross receipts from licensing agreements entered into during the terms of the Sales Agency Agreement.").

Arclight's attempt to invoke the "beneficial owner" exception referenced in *Syndicate Films* (Opp'n, 5:11) is unavailing. The beneficial owner exception is predicated on specific factual circumstances which are not present here and are not alleged in the FAC. *See Moran v. London Records, Ltd.*, 827 F.2d 180, 183 (7th Cir. 1987) ("when a copyright owner assigned title in exchange for the right to receive royalties from the copyright's exploitation, a fiduciary relationship arose between the parties, and the assignor became a 'beneficial owner' of the copyright with standing to sue infringers should the assignee fail to do so.") Arclight does not allege and cannot allege any of this. It does not and cannot allege an assignment of title to the Picture. It does not and cannot allege a right to receive royalties from the Picture's exploitation. Further, the doctrine can apply only to protect *assignors* of rights, not assignees. Arclight cannot claim that it was ever an *assignor* of a copyright interest subject to protection of the beneficial owner doctrine. Arclight does not have standing to sue as a beneficial owner of any copyright interest in the Picture. *See ibid*. ("The legislative history states that a 'beneficial owner' ... would include, for example, an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees.") (internal quotations omitted).

Arclight, like the plaintiff in *Syndicate Films*, was acting merely as a "licensing agent." It has no copyright interest in the Picture and no statutory standing to bring a claim for copyright infringement. *Syndicate Films Int'l, LLC*, 2010 WL 11519582, at *3 (C.D. Cal. Feb. 2, 2010). Arclight's claim for copyright infringement should be dismissed without leave to amend.

C. **Arclight Has Never Registered Any Purported Interest in the Picture With the U.S. Copyright Office.**

Defendants do not dispute that the Picture is a registered copyrighted work. Opp'n 4:19-21. However, Arclight alleges that the copyright is registered by *someone*, but does not allege and cannot allege that *Arclight* is a registered owner

4
REPLY IN SUPPORT OF MOTION TO DISMISS

of a copyright interest. But the law is clear that the *plaintiff itself* must be the registered owner of a copyright interest in order to bring suit. Arclight cites no authority, nor can it in view of the U.S. Supreme Court's holding in *Fourth Estate*, for the proposition that someone *other than* the registered owner of a copyright interest can initiate an action for infringement. That is not the law. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019) ("registration is akin to an administrative exhaustion requirement that *the owner must satisfy* before suing to enforce ownership rights") (emphasis added).

Although Arclight alleges that *Defendant ACM* was the "original owner of a valid copyright registration" (FAC, ¶30), it does not allege that *Arclight* obtained any registration for its alleged interest, or even applied. Arclight has no registration and has not pleaded registration in the FAC. Because Arclight has not even attempted to register an alleged copyright interest, its claim for infringement should be dismissed without leave to amend.

## III. ARCLIGHT'S STATE COURT CLAIMS HAVE NO EXTRA ELEMENT THAT ALLOWS IT TO ESCAPE PREEMPTION

Arclight fails to cite authority for the proposition that contract damages constitute an "extra element" for copyright preemption purposes. Opp'n, 6:25-28. The relevant inquiry is whether the "***rights asserted*** under state law are equivalent to the rights contained in 17 U.S.C. § 106," not whether the damages are the same. *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (emphasis added). In order to survive preemption, "the state cause of action must protect rights which are qualitatively different from the copyright rights. The state claim must have an ***extra element*** which changes the nature of the action." *Id*. at 1019 (emphasis added). A review of the FAC establishes that Arclight's state law claims are predicated on Defendants' alleged reproduction and/or distribution of a copyrighted work, namely the digital distribution of *Animal Crackers* on the Netflix platform.

With respect to its alleged claim for breach of contract, Arclight alleges that Mayday breached the Sales Agency Agreement (to which Mayday was not even a party) by "licensing Arclight's exclusive right in the Picture to Netflix." FAC ¶26. With respect to the interference claim, Arclight claims that Defendants interfered with "Arclight's exclusive rights to license the Picture." FAC ¶40. Arclight predicates its claim for Unjust Enrichment on the alleged rendering of services "regarding the Picture." FAC ¶43. Finally, the claim for Unfair Business Practices is unabashedly based on Defendants' alleged "infringing on Arclight's right in and to the Picture." FAC ¶49. The state law causes of action are predicated entirely on copyright infringement.

Arclight also alleges that the "subject matter" of its state law causes of action is not the Picture, but rather the "[Sales Agency] Agreement." Opp'n, 6:16-17. This distinction does not help Arclight. The common thread of each of Arclight's state law claims is its alleged copyright interest in the Picture *Animal Crackers* and Defendants' alleged infringement of that copyright. Arclight itself chose specifically to sue Defendants for copyright infringement. Its related state law claims such as those alleged in the FAC are plainly preempted by the Copyright Act and should be dismissed.

## IV. ARCLIGHT CANNOT ALLEGE A CAUSE OF ACTION FOR BREACH OF CONTRACT OR INTERFERENCE WITH CONTRACT AGAINST MAYDAY

In addition to preemption of its claims against Defendant Mayday under the Copyright Act, Arclight's claims against Mayday for Breach of Contract and Interference with Contract are both defective. Contrary to Arclight's position that "at least one" of the claims has merit, neither one does. Opp'n, 8:10. There is no claim against Mayday.

Arclight makes the legally insupportable assertion that Mayday is obligated as a party to the Sales Agency Agreement because it was allegedly aware of the

agreement when it became involved with the Picture. That is an insufficient basis to sustain a contract claim against Defendant Mayday, and as shown contradicted by facts alleged in the FAC as well. The mere fact that Defendant Mayday signed a "promissory note on the Picture" does not mean that it became a party to every contract entered into regarding the Picture before the promissory note was signed. Opp'n, 7:23. There is no basis for a claim for breach of contract against Mayday.

Arclight's claim for Interference with Contractual Relations independently fails. Other than the fact that this claim is preempted, Arclight alleges interference against parties to the contract including not only Mayday but Defendant ACM, which unquestionably is a party to the Sales Agency Agreement with Arclight. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994) ("the tort cause of action for interference with contract does not lie against a party to the contract.") Arclight's Cause of Action for Interference is defective on its face, and leave to amend should not be granted because Arclight's claims against Defendant Mayday are preempted or otherwise untenable and cannot reasonably be cured.

## V. ARCLIGHT CANNOT ALLEGE A CAUSE OF ACTION FOR UNJUST ENRICHMENT

Not only are Arclight's allegations internally inconsistent, and putting aside that unjust enrichment is not an independent cause of action in California, unjust enrichment pursuant to a claim of restitution requires Arclight to allege specified wrongful conduct by Mayday. No such conduct is present here.

Specifically, Arclight must allege that Mayday "obtained a benefit from [Arclight] by fraud, duress, conversion, or similar conduct." *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004). However, according to the FAC, Mayday's only complained-of conduct was "enter[ing] into... and agreement with [Netflix] for distribution of the Picture." FAC ¶43. This conduct is not legally "wrongful," nor does Arclight otherwise allege that Mayday committed fraud, duress, conversion, or

any other wrongful conduct. There is no legitimate basis to allege restitution based on unjust enrichment against Mayday.

## VI. LEAVE TO AMEND WOULD BE FUTILE AND SHOULD BE DENIED

Arclight should not be given leave to amend the FAC to concoct new claims against Mayday and Netflix because, as demonstrated, Arclight cannot allege a valid claim against Defendants with respect to the Picture. Arclight simply has no claims against strangers with whom it did not deal and should pursue claims against Defendant ACM, with whom it contracted.

"In deciding whether justice requires granting leave to amend, factors to be considered include the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). Further, "[l]eave to amend need not be given if a complaint, as amended, is subject to dismissal." *Ibid*.

Leave to amend should be denied "if amendment would be futile." *Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). Accordingly, "[l]eave to amend is warranted if the deficiencies can be cured with additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (internal quotations omitted).

Arclight cannot cure the deficiencies in its claims against Defendants. It has had two attempts to state a claim against parties with whom it never dealt without success. Because there are no facts entitling Arclight to maintain claims against Defendants, Mayday and Netflix should be dismissed from the case so that Arclight can pursue its claims against ACM.

## VII. CONCLUSION

Because Arclight has failed to state, and cannot state, a claim against Defendants Netflix and Mayday, the Motion should be granted. Defendants request that the claims against them be dismissed without leave to amend.

DATE: November 23, 2020

LAVELY & SINGER
PROFESSIONAL CORPORATION
PAUL N. SORRELL

By: */s/ Paul N. Sorrell*
PAUL N. SORRELL
Attorneys for Defendants NETFLIX GLOBAL, LLC, NETFLIX, INC. and MAYDAY MOVIE PRODUCTIONS, INC.

# **CERTIFICATE OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 2049 Century Park East, Suite 2400, Los Angeles, California 90067-2906.

      On the date set forth below, I served the foregoing document described as:

**REPLY BRIEF OF DEFENDANTS NETFLIX GLOBAL, LLC, NETFLIX, INC. AND MAYDAY MOVIE PRODUCTIONS, INC. IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

on the interested parties in this action as follows:

| | |
|---|---|
| Roderick J. Lindblom<br>John Begakis<br>The Law Offices of Roderick J. Lindblom<br>10880 Wilshire Blvd., Suite 1150<br>Los Angeles, CA 90024<br>Telephone: (310) 552-2021<br>Facsimile: (310) 552-2022<br>Email:  rod.lindblomlaw@gmail.com<br>            john.lindblomlaw@gmail.com | *Attorneys for Plaintiff Arclight Films International Pty. Ltd.* |

**[X]**    **BY EMAIL**: I transmitted the foregoing document by electronic mail to the e-mail address(es) stated above.

| | |
|---|---|
| Animal Crackers Movie Limited<br>8th Point Pentire Avenue<br>Newquay, Cornwall<br>England TR7 1 FS<br>Attn.: Scott Sava<br>Email:  scott@bluedreamstudios.com | *Defendant* |

**[X]**    **BY EMAIL**: I transmitted the foregoing document by electronic mail to the e-mail address(es) stated above.

**[X]**    **BY MAIL:**
I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

      I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed November 23, 2020 at Los Angeles, California.

*/s/ N. Echesabal*
Noelia Echesabal