UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'   JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:20-CV-09917-CAS-PVCx | Date | December 7, 2020 |
| Title | ARCLIGHT FILMS INTERNATIONAL PTY LTD. v. NETFLIX GLOBAL, LLC ET AL. | | |

Present: The Honorable   **CHRISTINA A. SNYDER**

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiff:
Roderick Lindblom
John Begakis

Attorneys Present for Defendants:
Martin Hirschland
Paul Sorrell

**Proceedings:** PLAINTIFF ARCLIGHT FILMS INTERNATIONAL PTY LTD'S NOTICE OF MOTION AND MOTION FOR REMAND (Dkt. [10], filed on November 9, 2020)

## I.   INTRODUCTION

On July 21, 2020, plaintiff Arclight Films International ("Arclight") brought this action in the Los Angeles County Superior Court against defendants Netflix, Inc., Netflix Global, LLC (together, "Netflix"), Animal Crackers Movie LTD ("Animal Crackers"), and Does 1 through 25. Dkt. 1-1 ("Compl."). In the complaint, Arclight alleged claims for breach of contract and declaratory relief. Id. ¶¶ 20–28. Arclight concurrently filed an *ex parte* application requesting a temporary restraining order to enjoin the distribution of the motion picture. Dkt. 1-6 ("TRO"). The Superior Court denied the *ex parte* application for a temporary restraining order on July 24, 2020. Dkt. 1-8.

Arclight thereafter filed the operative First Amended Complaint ("FAC") on September 28, 2020, which added defendant MayDay Movie Productions, LLC ("MayDay"). Dkt. 1-10. The FAC alleges claims for: (1) breach of contract against defendants Animal Crackers and MayDay; (2) copyright infringement pursuant to the Copyright Act of 1976, see 17 U.S.C. §§ 101, *et seq.* ("Copyright Act"), against Netflix and MayDay; (3) intentional interference with contractual relations against Animal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**         'O'   JS-6

| Case No. | 2:20-CV-09917-CAS-PVCx | Date | December 7, 2020 |
|---|---|---|---|
| Title | ARCLIGHT FILMS INTERNATIONAL PTY LTD. v. NETFLIX GLOBAL, LLC ET AL. | | |

Crackers and MayDay; (4) unjust enrichment[1] against Animal Crackers and MayDay; and (5) violations of California's Unfair Competition Law, see Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), against Netflix and MayDay.

On October 28, 2020, Netflix and MayDay (together, "moving defendants") removed the action to this Court. Dkt. 1 ("Removal"). Moving defendants argue this Court has jurisdiction both based on diversity of citizenship pursuant to 28 U.S.C. § 1332, and pursuant to 28 U.S.C. §§ 1331 and 1338, because the claim for copyright infringement arises under federal law. Removal at 2.

The moving defendants moved to dismiss the FAC on November 4, 2020. Dkt. 7 ("MTD"). But on November 9, 2020, Arclight moved to remand this case to the Superior Court. Dkt. 10 ("Remand Mot."). Oppositions to both motions have been filed. Dkts. 13 ("Opp. to Remand Mot."), 15 ("Opp. to MTD").

Arclight has also filed a motion to disqualify attorney Paul Sorrell and the law firm Lavely & Singer, P.C., from representing defendants in this action. Dkt. 6. Moving defendants oppose the motion to disqualify and move for sanctions. Dkt. 14.

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   BACKGROUND

Arclight is a proprietary limited company organized under the laws of Australia, with its principal place of business in Beverly Hills, California. FAC ¶ 2. Netflix is incorporated in Delaware with its principal place of business in Los Angeles, California.

---

[1] Because "unjust enrichment" is not a claim in its own right, the Court construes plaintiff's third claim as one for quasi-contract. Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015) ("When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." (quotation omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'   JS-6

| Case No. | 2:20-CV-09917-CAS-PVCx | Date | December 7, 2020 |
|---|---|---|---|
| Title | ARCLIGHT FILMS INTERNATIONAL PTY LTD. v. NETFLIX GLOBAL, LLC ET AL. | | |

Id. ¶¶ 3–4. Animal Crackers is organized under the laws of Wales and England, with its principal place of business in England. Id. ¶ 5. Finally, MayDay is incorporated under the laws of and has its principal place of business in the state of Washington. Id. ¶ 6.

Arclight's claims arise from Animal Crackers' production and release of a feature-length motion picture entitled "Animal Crackers" (the "Motion Picture"). Id. ¶ 11. On September 21, 2016, MayDay loaned Animal Crackers roughly $5,000,000 in exchange for a promissory note in that amount. Id. ¶ 12. In connection therewith, Animal Crackers gave MayDay a security interest in the Motion Picture. Id.; see Dkt. 6-7, Exh. E at 3.

On March 29, 2017, Animal Crackers entered into a sales agency agreement with Arclight. Id. ¶ 13; see FAC Exh. A ("Sales Agency Agreement"). The Sales Agency Agreement established Arclight as the "sole and exclusive sales agent," Sales Agency Agreement at 1, for the Motion Picture in the territory defined as all markets except North America, Mainland China and South Korea, FAC ¶ 13; Sales Agency Agreement ¶ 2. Specifically, paragraph 5.a states:

> Producer [Animal Crackers] hereby appoints Agent [Arclight], and Agent accepts such appointment, to act as Producer's sole and exclusive sales agent in the Territory during the Term with respect to the sales, marketing, licensing, and servicing of the Licensed Rights in the Picture. Pursuant to such appointment, Agent shall perform all services customarily undertaken by sales agents in the motion picture industry on Producer's behalf[.]

Sales Agency Agreement ¶ 5.a. The Sales Agency Agreement defines the "licensed rights" as:

> The "Licensed Rights" shall mean the right to exploit, exhibit, distribute, market, promote, transmit and disseminate the Picture (and all allied and ancillary rights relating thereto), in any and all media now known or hereafter devised, including, all forms of theatrical, home-video, television (including free, cable, pay and satellite), non-theatrical rights (including, hotel, ship and airline rights), internet and wireless, by any and all methods of delivery, whether now known or hereafter devised.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**　　'O'　JS-6

| Case No. | 2:20-CV-09917-CAS-PVCx | Date | December 7, 2020 |
|---|---|---|---|
| Title | ARCLIGHT FILMS INTERNATIONAL PTY LTD. v. NETFLIX GLOBAL, LLC ET AL. | | |

Id. ¶ 4.a. The Sales Agency Agreement also entitled Arclight to an agent fee of 10% of gross revenues from exploitation of the Motion Picture in the territory, plus a $350,000 marketing fee. FAC ¶ 13; Sales Agency Agreement ¶¶ 8.a, 9.

By the terms of the Sales Agency Agreement, Animal Crackers represented that it "own[ed] free and clear all rights necessary to enter into [the] Agreement," and that it would "not grant to any third party any of the Licensed Rights in the Territory" without written consent from Arclight. FAC ¶ 14; Sales Agency Agreement ¶¶ 16.a(iii)–(iv).

The Sales Agency Agreement also included a termination provision, which stated in relevant part:

> Either party may terminate this Agreement by written notice if the other party commits a material breach of its terms and fails to cure such breach (if capable of cure) within thirty (30) days after receipt of written notice demanding same[.] … Unless the termination is for Agent's willful misconduct or gross negligence, Agent shall remain entitled to its Marketing Fee, payable from Gross Receipts in accordance with Section 11.

Sales Agency Agreement ¶ 20.

After the parties entered into the Sales Agency Agreement, Animal Crackers' principal, Scott Sava, several times attempted to terminate it. FAC ¶ 16. For instance, on June 18, 2018, Sava emailed Arclight, stating, "I think its best we separate… What paperwork do we need to split up?" Id. However, Arclight argues these would-be terminations were ineffectual because they were without cause and in contravention of the termination provision in the Sales Agency Agreement. Id.; Remand Mot. at 2. Arclight avers it fulfilled its obligations under the Sales Agency Agreement, including licensing distribution rights with distributors in several foreign countries. FAC ¶ 17. Arclight also contends it provided additional services not mandated by the Sales Agency Agreement such as assisting in raising funds and with public relations. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'   JS-6

| Case No. | 2:20-CV-09917-CAS-PVCx | Date | December 7, 2020 |
|---|---|---|---|
| Title | ARCLIGHT FILMS INTERNATIONAL PTY LTD. v. NETFLIX GLOBAL, LLC ET AL. | | |

Nevertheless, Arclight alleges that, in March 2020, Animal Crackers and MayDay[2] breached the Sales Agency Agreement and infringed on Arclight's copyright interest in the Motion Picture by licensing the right to distribute it to Netflix. FAC ¶¶ 17, 26. Arclight sent cease and desist letters to Netflix on March 25 and April 3, 2020 requesting that it refrain from distributing the Motion Picture, id. ¶¶ 18–19; see dkt. 1-10, Exh. B ("March 25, 2020 Letter"), and, as previously noted, sought a temporary restraining order from the Superior Court on June 21, 2020, see TRO. Nevertheless, Netflix released the Motion Picture on July 24, 2020.[3] FAC ¶ 21.

Arclight contends that Netflix's release of the digital version of the motion picture rendered worthless its rights to license distribution of the Motion Picture pursuant to the Sales Agency Agreement. Id. Arclight argues the Sales Agency Agreement conferred on Arclight the exclusive right to distribute the Motion Picture in the prescribed territory, and therefore a protectable copyright interest in the Motion Picture. Id. ¶¶ 13, 30–31. Arclight seeks to recover statutory damages, lost profits and attorneys' fees pursuant to the Copyright Act, see 17 U.S.C. §§ 504, 505, as well as general damages, and an accounting. FAC at 10. Moving defendants argue the Sales Agency Agreement did not confer a right

---

[2] Animal Crackers eventually defaulted on the loan agreement, and MayDay obtained the copyright to the Motion Picture. Although the parties' filings do not specify the date on which MayDay acquired the copyright for the Motion Picture, it appears, from an email correspondence attached as Exhibit E to plaintiff's motion to disqualify counsel, that MayDay acquired the copyright on April 24, 2019. Dkt. 6-7, Exh. E at 3 ("[Animal Crackers] subsequently defaulted on the Loan and, on April 24, 2019, the United States Copyright Office processed and recorded [Animal Cracker]'s assignment of copyright and all other rights to MayDay.").

[3] Plaintiff's complaint states Netflix released the Motion Picture on June 24, 2017. FAC ¶ 21. However, based on the *ex parte* application plaintiff filed in the Superior Court and the general timeline of the underlying facts, the Court understands this to be a typographic error.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**         'O'   JS-6

| Case No. | 2:20-CV-09917-CAS-PVCx | Date | December 7, 2020 |
|---|---|---|---|
| Title | ARCLIGHT FILMS INTERNATIONAL PTY LTD. v. NETFLIX GLOBAL, LLC ET AL. | | |

to distribute or exploit the Motion Picture, but rather only the right to act as a sales agent on behalf of Animal Crackers. MTD at 4–5. As such, they assert, Arclight had no protectable copyright interest and therefore has no claim for infringement.

### III.   LEGAL STANDARD

Removal is proper where the federal courts would have had original jurisdiction over an action filed in state court. See 28 U.S.C. § 1441(a). In general, a federal district court has subject matter jurisdiction where a case presents a claim arising under federal law ("federal question jurisdiction"), or where the plaintiffs and defendants are residents of different states and the amount in controversy exceeds $75,000 ("diversity jurisdiction"). See Deutsche Bank Nat'l Trust Co. v. Galindo, No. CV 10-01893, 2011 WL 662324, *1 (C.D. Cal. Feb. 11, 2011) (explaining the two types of jurisdiction). The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). Thus, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Id. (citation omitted). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id. (quotation omitted).

### IV.   DISCUSSION

#### A. Federal Question Jurisdiction and Copyright

Moving defendants argue removal is proper because this Court has subject matter jurisdiction based on 28 U.S.C. §§ 1331 and 1338 because the FAC asserts a claim for copyright infringement, and the complaint seeks relief specifically provided for by the Copyright Act. Opp. to Remand Mot. at 3, 4. Arclight responds that the claims at issue do not arise under the Copyright Act because the only copyright-related disputes are whether the Sales Agency Agreement transferred protectable copyright interests to Arclight, and whether that agreement was breached, which are contract disputes. Remand Mot. at 5.

Federal courts have exclusive jurisdiction over cases "arising under" any statute relating to copyrights. See 28 U.S.C. § 1338(a). A case "arises under" the Copyright Act if: "(1) the complaint asks for a remedy expressly granted by the Copyright Act; (2) the complaint requires an interpretation of the Copyright Act; or (3) federal principles should

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'   JS-6

| Case No. | 2:20-CV-09917-CAS-PVCx | Date | December 7, 2020 |
|---|---|---|---|
| Title | ARCLIGHT FILMS INTERNATIONAL PTY LTD. v. NETFLIX GLOBAL, LLC ET AL. | | |

control the claims." Scholastic Entm't, Inc. v. Fox Entm't Group, Inc., 336 F.3d 982, 983 (9th Cir. 2003). The test is essentially a restatement of the well-pleaded complaint rule. Id.

"At the same time, it is well established that just because a case involves a copyright does not mean that federal subject matter jurisdiction exists." Id. at 985 (citing Vestron, Inc. v. Home Box Office Inc., 839 F.2d 1380, 1381 (9th Cir. 1988)). "Federal courts have consistently dismissed complaints in copyright cases presenting only questions of contract law." Id. (citing Dolch v. United California Bank, 702 F.2d 178, 180 (9th Cir. 1983)); see Topolos v. Caldewey, 698 F.2d 991, 993 (9th Cir. 1983) ("[F]ederal courts do not have jurisdiction over a suit on a contract simply because a copyright is the subject matter of the contract."). A federal court lacks subject matter jurisdiction over an action that seeks nothing more than a determination of ownership based on contract principles, because "questions regarding the ownership of a copyright are governed by state law." Scholastic Entm't, 336 F.3d at 983.

Here, Arclight's complaint alleges infringement and requests, among other things, statutory damages and profits pursuant to 17 U.S.C. § 504, and attorneys' fees pursuant to 17 U.S.C. § 505. FAC ¶¶ 34–36. However, these allegations elide a threshold issue, namely, the question of whether the Sales Agency Agreement transferred ownership of the copyright to Arclight, or whether it simply authorized Arclight to serve as an agent with respect to the distribution of the Motion Picture—a service which includes the right to exhibit the Motion Picture for those limited purposes. To that point, the plain terms of the Sales Agency Agreement state that Animal Crackers engaged Arclight "as the sole and exclusive sales agent for the Picture," Sales Agency Agreement at 1, and that the "Producer [] appoint[ed] Agent … to act as Producer's sole and exclusive sales agent … with respect to the sales, marketing, licensing, and servicing of the Licensed Rights in the Picture," id. ¶ 5.a. Absent from the list of rights conferred to Arclight by the Sales Agency Agreement are those enumerated in 17 U.S.C. § 106, which are the only rights that confer standing to sue for infringement. See Silvers v. Sony Pictures Entm't, Inc., 402 F.3d 881, 884 (9th Cir. 2005) ("To be entitled to sue for copyright infringement, the plaintiff must be the legal or beneficial owner of an exclusive right under a copyright." (quotation omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'   JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:20-CV-09917-CAS-PVCx | Date | December 7, 2020 |
| Title | ARCLIGHT FILMS INTERNATIONAL PTY LTD. v. NETFLIX GLOBAL, LLC ET AL. | | |

Furthermore, although the licensed rights enumerated in paragraph 4.a of the Sales Agency Agreement arguably include some rights found in 17 U.S.C. § 106, such as the right to "exploit, [and] exhibit" the Motion Picture, see 117 U.S.C. § 106(4) ("to perform the copyrighted work publicly"), the licensed rights omit other rights associated with copyright ownership, such as the right to reproduce the Motion Picture, see 17 U.S.C. § 106(1), or produce derivative works, see 17 U.S.C. § 106(2). The licensed rights are therefore something less than the rights that would have been available for Arclight to convey to third parties if Arclight was really in a position to grant the rights associated with copyright ownership. It therefore stands to reason that the Sales Agency Agreement conferred on Arclight only the authority to enter into licensing agreements with distributors on behalf of Animal Crackers, and does not confer copyright ownership on Arclight itself. See Syndicate Films Int'l, LLC v. All. Films, Inc., No. CV 09-3873 PA (CTX), 2010 WL 11519582, at *3 (C.D. Cal. Feb. 2, 2010) (refusing to conclude "an agent with nothing more than the right to negotiate and enter into license agreements has standing to bring a claim for copyright infringement"); Bourne Co. v. Hunter Country Club, Inc., 990 F.2d 934, 937 (7th Cir. 1993) (licensing agents are not considered beneficial owners under the Copyright Act). Therefore, because by its terms the Sales Agency Agreement does not confer ownership of the copyright to Arclight, but rather establishes Arclight as an agent with the authority to license the Motion Picture to distributors, "ownership is the sole question for consideration," and this Court is without jurisdiction. Topolos, 698 F.2d at 994.

### B. Diversity Jurisdiction and Fraudulent Joinder

Moving defendants also argue this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 on a theory that the non-diverse defendant, Netflix, was fraudulently joined. Opp. to Remand Mot. at 10. Arclight, which has a principal place of business in Beverly Hills, California, is not diverse from Netflix, which has a principal place of business in Los Angeles, California. FAC ¶¶ 2–4.

An exception to the requirement of complete diversity exists where it appears that a plaintiff has fraudulently joined a "sham" non-diverse defendant. Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998). If a court finds fraudulent joinder of a sham defendant, it may disregard the citizenship of the sham defendant for removal purposes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**   **JS-6**

| Case No. | 2:20-CV-09917-CAS-PVCx | Date | December 7, 2020 |
|---|---|---|---|
| Title | ARCLIGHT FILMS INTERNATIONAL PTY LTD. v. NETFLIX GLOBAL, LLC ET AL. | | |

Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001). A non-diverse defendant is fraudulently joined where "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987).

That said, there is a "general presumption against fraudulent joinder," and defendants who assert that a party is fraudulently joined carry a "heavy burden." Hunter v. Philip Morris USA, 582 F.3d 1039, 1046 (9th Cir. 2009). Defendants must "show that the individuals joined in the action cannot be liable on any theory," Ritchey, 139 F.3d at 1318, and that "there is no possibility that the plaintiff will be able to establish a cause of action in state court against the alleged sham defendant," Good v. Prudential Insurance Company of America, 5 F.Supp.2d 804, 807 (N.D. Cal. 1998). In accordance with this high standard, "the court resolves all ambiguity in favor of remand to state court." Hunter, 582 F.3d at 1042. Courts may consider "affidavits or other evidence (presented by either party) on the issue of whether a particular defendant's joinder is 'sham' or 'fraudulent.'" Virginia A. Phillips, J. & Karen L. Stevenson, J., Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial § 2:2295 (The Rutter Group 2020) (citing W. Am. Corp. v. Vaughan-Basset Furniture, 765 F.2d 932, 936 n.6 (9th Cir. 1985). However, a court's inquiry into fraudulent joinder ought to be "summary" because "the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." Hunter, 582 F.3d at 1045 (quotation omitted).

Here, on the face of the complaint there is not complete diversity. Furthermore, Netflix cannot be said to be a "sham" defendant in that it is not obvious that it "cannot be liable [to Arclight] on any theory." Ritchey, 139 F.3d at 1318. To the contrary, whether or not there is a potential copyright claim, it remains clear, for instance, that Arclight may be able to state a claim against Netflix for tortious interference with a contractual relationship. The Court therefore declines to assert jurisdiction over the case based on the theory of fraudulent joinder.

**C. Attorneys' Fees**

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'   JS-6

| Case No. | 2:20-CV-09917-CAS-PVCx | Date | December 7, 2020 |
|---|---|---|---|
| Title | ARCLIGHT FILMS INTERNATIONAL PTY LTD. v. NETFLIX GLOBAL, LLC ET AL. | | |

In the context of a remand order, pursuant to section 1447(c), district courts have "wide discretion" to decide whether to award attorneys' fees and costs. See Moore v. Permanente Med. Grp., 981 F.2d 443, 447 (9th Cir. 1992). Courts generally award fees "where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). In this case, the Court exercises its discretion to deny the request for attorneys' fees. See Scholastic Entm't, 336 F.3d at 983 ("whether a case involving interdependent copyright and contract claims 'arises under' the federal copyright laws" is "one of the 'knottiest problems in copyright jurisprudence'" (quoting 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyrights § 12.01[A], at 12–14 (2003)).

### V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** plaintiff's motion to remand this action to the Los Angeles County Superior Court. The Court **DENIES** plaintiff's request for attorneys' fees related to the preparation and filing of its motion for remand.[4]

IT IS SO ORDERED.

|  | 00 : 15 |
|---|---|
| Initials of Preparer | CMJ |

---

[4] Because this case is being remanded to the Superior Court, the Court does not reach moving defendants' motion to dismiss nor plaintiff's motion to disqualify opposing counsel. The Court also finds the parties adequately met and conferred pursuant to C.D. Cal. Local Rule 7-3. See Opp. to Remand Mot. at 12.